UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

FILED
...'S OFFICE

2004 AUG 30 P 1: 26

U.S. DISTRICT COURT
DISTRICT OF MASS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| vs. | ) | 04 CR10168 PBS |
| | ) | |
| ADAM ELLERD, ET AL | ) | |

## MEMORANDUM IN SUPPORT OF THE DEFENDANT, TAVON ROBINSON'S, MOTION TO SUPPRESS

### FACTS

On April 12, 2004 Robinson and the other four defendants were arrested by DEA agents and Boston police officers after an alleged drug sale to S/A DiTullio, acting in an under cover capacity. According to the affidavit of DEA S/A Steven C. Storey, Robinson was driving a Ford Focus automobile in which two other defendants, Steven Tucker and Nelson Barnes were passengers. Another vehicle, a Honda Civic, driven by Willie Hester, the principal suspect, was also at the scene of the alleged drug deal. Adam Ellerd, another defendant, was a passenger in the Honda. DEA agents Sawyer and DiTullio submitted conflicting, approved by Group Supervisor Guerard, concerning Robinson's actions at the scene. Sawyer reported that DiTullio and Guerard saw Robinson got out of the Ford and walk to the hood of the car and partially open and close it. His report does not state that DiTullio or Guerard saw Robinson take anything from under the hood. S/A Storey's affidavit also neglected to say that DiTullio saw any object under the hood; it merely stated that the UCA (DiTullio) saw Robinson "partially open the hood of his car, and then close the hood" and makes no reference to any object under the hood. However, S/A DiTullio, in his report, says that he saw Robinson "exit the vehicle, walk to the front of the hood area of the vehicle, proceed to lift the hood approximately ¼ open and extract what

appeared to be an unidentified object from under the hood and place it in his jacket pocket." He then saw Robinson walk from the hood area to the open door on the driver side, lean inside and appear to have a conversation with its two occupants. He reported that Robinson then walked toward him with his right hand tucked inside his jacket pocket. Robinson approached the passenger's side of DiTullio's vehicle and "lean(ed) in the window" at which time DiTullio saw Robinson "extract a clear plastic bag from his jacket pocket" and place it on the front passenger seat of his car. Robinson picked through this plastic bag and removed a second plastic bag, containing a white rock-like substance which he placed it on the front passenger seat of DiTullio's vehicle. While Robinson was doing this, DiTullio saw two smaller plastic baggies within the outer bag, containing beige rock like substances. He saw Robinson place this outer bag, containing the two smaller plastic baggies back into his jacket pocket. DiTullio gave Robinson $2,350 in government currency and, as Robinson walked away from the vehicle, he contacted the other DEA agents and the Boston police who were standing by. Robinson attempted to flee on foot but was arrested by DEA agents and the Boston police. Incident to his arrest, the $2,350 in government currency, as well as two clear plastic bags containing a beige rock like substance and 53 grams of marijuana was seized from his person. Barnes and Tucker, the two passengers in Robinson's vehicle, were arrested while still in the car. No contraband was found on either of them nor was any observed in the car when they were arrested.

Robinson's car was driven from the scene and secured at the Massachusetts State Police Barracks in South Boston for temporary storage. It is not known whether or not the DEA has an Inventory Search Policy. Later that evening it was moved from the State Police Barracks to the DEA garage "for processing". During the "processing" procedure two hand guns, wrapped in a white T-shirt, were found under the hood of the vehicle.

ARGUMENT

The defendant concedes that a search of a motor vehicle, based on probable, cause need not take place at the time or place where the vehicle is seized. However, the scope of a warrantless search of an automobile is defined by the object of the search and the places in which there is probable cause to believe that it may be found. *United States v. Ross*, 456 U.S. 798, 823-824 (1982). It is submitted that there was no probable cause to believe that any evidentiary items were in the car after the arrests were made and the defendant's car was moved from the scene. No contraband was observed in the interior of the car where Barnes and Tucker were arrested. When Robinson was searched, incident to his arrest, he had the $2,350 dollars that DiTullio had given him in his pocket as well as the two clear plastic baggies that DiTullio saw when the sale was made. It follows from DiTullio's report that whatever he saw under the hood of the car was removed by Robinson and put it in his jacket pocket, therefore there was no probable cause to believe any object remained under the hood. *United States v. Ross, supra.* It is submitted that the search under the hood, hours after the car had been removed, was an unconstitutional general rummaging to discover incriminating evidence. *Florida v. Wells*, 495 U.S. 1, 4 (1990).

Conversely, a warrantless inventory search undertaken to protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger need not be based on probable cause but it must be conducted pursuant to reasonable standard procedures designed to serve some interest other than investigation of criminal activity. *Colorado v. Bertine, 479 U.S. 367,372* (1987), *Florida v. Wells, supra.*

3

The search under the hood of the defendant's vehicle, after it had been first taken to the Massachusetts Police Barracks and later taken to the DEA garage for "processing" was not a valid inventory search but was done for the sole purpose of discovering incriminating evidence. It strains credulity to suggest that the search under the hood of the defendant's car was a legitimate part of an inventory search. Nothing could possibly be found under the hood that would "protect an owner's property while it is in the custody of the police, to insure against claims of lost, stolen or vandalized property, and to guard the police from danger". *Colorado v. Bertine, supra.* In addition, the defendant is unaware of any DEA procedure for conducting inventory searches.

Base on the foregoing, it is submitted that the warrantless search under the hood of the defendant's vehicle was not based on probable cause or was a valid inventory search. Therefore the firearms found under the hood of the car must be suppressed.

Respectfully submitted
Tavon Robinson
By his attorney

Paul F. Markham

CERTIFICATE OF SERVICE

I hereby certify that on this day a true copy of the above document was served upon the attorney of record for each party by mail /by hand.

Date: 8/27/04

4