UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

```
_____
                              )
TAVON ROBINSON,               )
            Petitioner,       )
        v.                    )   CRIM. ACTION NO. 04-10168-PBS
                              )
UNITED STATES OF AMERICA,     )
            Respondent.       )
_____)
```

## MEMORANDUM AND ORDER

September 8, 2009

Saris, U.S.D.J.

### I. INTRODUCTION

Pro se petitioner Tavon Robinson, who has been convicted of drug and firearm offenses, has filed a habeas petition under 28 U.S.C. § 2255 on multiple grounds, including a claim that he received ineffective assistance of counsel. After review of the briefs, the Court **DENIES** the petition with respect to all grounds except those claims regarding newly discovered evidence.

### II. FACTUAL BACKGROUND

Petitioner Tavon Robinson ("Petitioner") and four others were arrested on April 12, 2004. On April 13, 2004, a criminal complaint against all five persons was issued; an indictment followed on May 27, 2004. The indictment charged Robinson with two counts of drug-related offenses,[1] one count of being a felon

---

[1] The two drug counts were (1) conspiracy to possess with intent to distribute, and to distribute, cocaine in violation of 21 U.S.C. § 846, and (2) possession with intent to distribute, and distribution of, cocaine, and aiding and abetting in violation of 21 U.S.C. § 841(a)(1) and 18 U.S.C. § 2. The indictment also contained a criminal forfeiture allegation that included Petitioner.

in possession of a firearm in violation of 18 U.S.C. § 922(g)(1),
and one count of possession of a firearm in furtherance of a drug
trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A).

Petitioner pled not guilty to all four counts, and his jury
trial began on January 3, 2005.  Shortly thereafter, on January
5, 2005, Petitioner changed his plea to guilty on the drug
counts.  The trial continued on the remaining firearm counts, and
the jury returned a guilty verdict on January 10, 2005.

The First Circuit summarized the evidence at trial as
follows:

> In 2004, DEA Special Agent David DiTullio
> agreed to purchase two ounces of crack
> cocaine for $2,350 from Adam Ellard as part
> of an undercover drug investigation.  Unable
> to locate any crack cocaine for the deal,
> Ellard contacted William Hester, whom he had
> seen packaging crack on a previous occasion
> with another man, Norman Barnes.  Hester
> agreed to sell Ellard sixty-two grams of
> crack cocaine, but conditioned the sale on
> his accompanying Ellard to the deal.
>
> Hester picked up Ellard in a Honda, followed
> by a Ford with New Hampshire plates.  The
> Ford had three occupants: Robinson in the
> driver's seat, Stephen Tucker in the front
> passenger seat, and Barnes in the back.  The
> two cars traveled to a parking lot in
> Dorchester to complete the deal with
> DiTullio.  Ellard exited the Honda and
> entered the passenger side of DiTullio's
> vehicle.  He told DiTullio that the crack
> cocaine was in the Ford and requested the
> $2,350.  DiTullio showed Ellard the money,
> let him count it, but would not give it to
> him unless he produced the crack cocaine.
> Ellard returned to the Honda to consult with
> Hester, who told him to go speak with Barnes
> in the Honda.  Barnes informed Ellard he
> would not produce the drugs without any
> money.  In an attempt to compromise, Ellard
> had DiTullio back his vehicle up to the rear

of the Ford.  DiTullio again refused to give
Ellard the money without any drugs.

Frustrated at the stalled deal, Robinson
exited the driver's seat of the Ford, walked
to the front of the hood for a few moments,
and then proceeded to DiTullio's vehicle.
Speaking with DiTullio through the passenger
window, Robinson removed a clear plastic bag
from his jacket and placed it on the front
passenger seat.  DiTullio gave Robinson the
money, and Robinson began walking back to the
Ford.  As law enforcement officers moved in
for an arrest, Robinson fled briefly before
being apprehended.  He was arrested and
police found $2,350 and a clear plastic bag
containing marijuana and crack cocaine in his
possession.

After seizure of the Ford, an inspection at a
garage revealed two loaded semiautomatic
pistols wrapped in a T-shirt and hidden
inside a small space in front of the engine
compartment near the front of the hood.

The next day, Officer Conners overheard
Robinson and Barnes conversing in their
shared holding cell.  According to Officer
Conners, Robinson remarked to Barnes, "It's
not crack anyway.  It's only coke.  They'll
find that out when they do the lab tests."
Officer Conners also heard Robinson tell
Barnes that "When they came from everywhere,
I could have gone boom, boom."

At trial, in his opening statement,
Robinson's counsel admitted his client's
guilt on the drug charges, but argued that he
was unaware of the firearms' presence.
Robinson was convicted on both firearms
charges.

United States v. Robinson, 473 F.3d 387, 391-92 (1st Cir. 2007).

Petitioner was sentenced to 137 months imprisonment, three years

of supervised release, and a $400 special assessment.

Petitioner appealed both firearms convictions and his

sentence, raising three issues: prosecutorial misconduct based on

allegedly improper questions and closing argument, insufficient evidence as to the charge of possession of firearms in furtherance of a drug deal, and improper sentencing.   The First Circuit affirmed the sentence in a written opinion issued on January 11, 2007.   See Robinson, 473 F.3d at 401.

### III.   DISCUSSION

#### A.   Standard of Review

A defendant may seek post-conviction relief under § 2255 from his sentence in four instances: if the sentence "(1) was imposed in violation of the Constitution, or (2) was imposed by a court that lacked jurisdiction, or (3) exceeded the statutory maximum, or (4) was otherwise subject to collateral attack." David v. United States, 134 F.3d 470, 474 (1st Cir. 1998) (citing Hill v. United States, 368 U.S. 424, 426-27 (1962) (construing Section 2255)).   The claimed error for which a party requests relief must be "a fundamental defect which inherently results in a complete miscarriage of justice."   United States v. Addonozio, 442 U.S. 178, 185 (1979) (citing Hill, 368 U.S. at 426-27). "Section 2255 is not a surrogate for a direct appeal."   David, 134 F.3d at 474.

#### B. Robinson's Claims

Robinson asserts seven claims in his petition, six of which can be characterized as "stand-alone" substantive claims.[2]   The

---

[2] The six "stand-alone" claims are (1) unlawful sentencing; (2) unconstitutional jury selection; (3) that the felon in

seventh claim alleges ineffective assistance of counsel and itself involves many subparts.  Five of the six "stand-alone" claims are procedurally barred because Robinson did not raise them on appeal.  To the extent that any of these five arguments were raised and decided previously on appeal, they too are barred.  The only "stand-alone" claim to survive is that based on an allegation of newly discovered evidence, as explained further below.

"Normally, failure to raise a constitutional issue on direct appeal will bar raising the issue on collateral attack unless the defendant can show cause for the failure and actual prejudice." Knight v. United States, 37 F.3d 769, 774 (1st Cir. 1994); see United States v. Frady, 456 U.S. 152, 167 (1982) (applying the "cause and prejudice standard" to petitions seeking collateral relief based on trial errors unless objection was made at trial or on direct appeal); David, 134 F.3d at 474.  Petitioner has neither shown cause as to why he failed to assert these five claims on direct appeal,[3] nor established that any of the

---

possession statute is "unfairly prejudicial"; (4) violation of the Speedy Trial Act; (5) newly discovered evidence; and (6) prosecutorial misconduct.  (Pet'r Mot. to Vacate and Mem. in Supp. [Docket No. 222] 1) ("Pet'r Br.").

[3] In his first memorandum supporting his petition, Robinson only states an ineffective assistance of counsel claim with respect to his trial counsel's performance (Markham).  (Pet'r Br. 10.)  In his reply brief, Robinson, responding to the government's assertion that the majority of his claims were procedurally barred, states that "the fact that [these claims] were not raised at an earlier time confirms [h]is claim of

exceptions to the procedural bar apply here.

**C. Ineffective Assistance of Counsel**

Though it was not raised on direct appeal, Petitioner's ineffective assistance of counsel claim survives.  A previously-unraised ineffective assistance of counsel claim is "not subject to the cause and prejudice standard" because "collateral attack is the preferred forum for such claims."  Knight, 37 F.3d at 774; see Cody v. United States, 249 F.3d 47, 52 (1st Cir. 2001) (procedural default that barred petitioner's collateral attack on his guilty plea does not preclude his ineffective assistance of counsel claim).

To succeed on an ineffective assistance claim, the petitioner "must establish that (1) 'counsel's representation fell below an objective standard of reasonableness,' and (2) 'a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  Smiley v. Maloney, 422 F.3d 17, 20 (1st Cir. 2005) (quoting Strickland v. Washington, 466 U.S. 668, 689, 694 (1984)).  A failure of proof on either prong defeats an ineffective assistance of counsel claim.  See Malone v. Clarke, 536 F.3d 54, 64 (1st Cir. 2008) ("[I]f it is easier to dispose of an

---

ineffective assistance of counsel, at numerous stages of the legal process."  (Pet'r Reply Br. [Docket No. 228] at 2.)  He does not, however, add any more specific allegations with respect to his appellate counsel.  This lone statement is insufficient to state an ineffective assistance claim with respect to appellate counsel and does not preclude a finding of waiver as to petitioner's stand-alone claims.

ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed.") (internal quotation marks omitted).

The review of counsel performed under the first prong is "highly deferential"; a petitioner must show that "given the facts known at the time, counsel's 'choice was so patently unreasonable that no competent attorney would have made it.'" Knight v. Spencer, 447 F.3d 6, 15 (1st Cir. 2006) (internal quotation marks omitted).   Counsel's tactical decisions cannot generally form a basis for an ineffective assistance of counsel claim.   Murchu v. United States, 926 F.2d 50, 58 (1st Cir. 1991) ("[T]actical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance.") (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir. 1983)); United States v. Natanel, 938 F.2d 302, 310 (1st Cir. 1991).   The second prong of the Strickland test requires a petitioner to demonstrate actual prejudice from the alleged mistakes of counsel.   Rice v. Hall, 564 F.3d 523, 525 (1st Cir. 2009) (describing the second prong as a "prejudice requirement" that has been "variously stated").   To prevail on a Section 2255 ineffective-assistance claim, a petitioner must establish both ineffective assistance of counsel and entitlement to Section 2255 relief by a preponderance of the evidence.   Lema v. United States, 987 F.2d 48, 51 (1st Cir. 1993) ("The burden is on the petitioner to demonstrate ineffective

assistance by a preponderance of the evidence."); United States
v. DiCarlo, 575 F.2d 952, 954 (1st Cir. 1978) ("In seeking
collaterally to attack their convictions under section 2255,
defendants bear the burden of establishing by a preponderance of
the evidence that they are entitled to relief.").  With these
principles in mind, this Court turns to petitioner's particular
allegations within his ineffective-assistance claim.

1. Juror Selection

Petitioner challenges his counsel's performance during the
jury selection process, asserting that his attorney failed to
object to what Robinson deemed an unconstitutional procedure and,
in particular, the inclusion of one particular juror.  Robinson
faults his attorney for not objecting to the composition of the
jury pool, claiming that the lack of minorities and people from
petitioner's district (Suffolk County) constituted a violation of
his Sixth Amendment guarantee of a fair and impartial jury.

"[T]he American concept of the jury trial contemplates a
jury drawn from a fair cross section of the community," but the
fair cross-section requirement neither guarantees that juries be
of any particular composition nor requires that a jury pool be a
substantially true mirror of the community.  United States v.
Royal, 174 F.3d 1, 5-6 (1st Cir. 1999) (internal quotation marks
and citations omitted); see In re United States, 426 F.3d 1, 9
(1st Cir. 2005) ("No one is entitled automatically to be tried by
a jury of persons comprised of his or her own race, religion or

gender.").  The standard for asserting a fair cross-section claim
is high, and petitioner falls far short of establishing even that
his counsel had grounds upon which to make such a claim at trial.
In <u>United States v. Lopez</u>, 147 F.3d 1, 2 (1st Cir. 1998), prior
to impanelment but after having viewed the jury pool, defense
counsel moved for the venire to be dismissed, contending that the
defendant (a Hispanic male) was going to be denied a jury of his
peers.  The district court denied the motion, and the First
Circuit affirmed, holding that the defendant had "no basis for a
fair cross-section challenge based only on visual observation and
an examination of the venire's names."  <u>Id.</u> at 3.  Petitioner
offers no reason to suggest that a similar motion by his counsel
would not have met the same fate.

> To make a prima facie case that the right to
> a jury drawn from a fair cross-section of the
> community has been violated, a defendant must
> establish the following: (1) that the group
> alleged to be excluded is a "distinctive"
> group in the community; (2) that the
> representation of this group in venires from
> which juries are selected is not fair and
> reasonable in relation to the number of such
> persons in the community; and (3) that this
> underrepresentation is due to systematic
> exclusion of the group in the jury-selection
> process.

<u>United States v. Benjamin</u>, 252 F.3d 1, 12 (1st Cir. 2001) (citing
<u>Duren v. Missouri</u>, 439 U.S. 357, 364 (1979)).  Applying this
standard, the First Circuit has rejected a post-conviction

argument that the jury selection process produced a systematic underrepresentation of African-American jurors even in a case where the defendant put forth "complicated mathematical analyses" in support of his claim.  Id. (citing Royal, 174 F.3d at 6). Here, Defendant has not even alleged a systematic exclusion, much less provided evidence indicating its existence.  Cf. Benjamin, 252 F.3d at 12 (rejecting African-American defendant's fair cross-section claim because he failed to produce any statistical evidence to establish that the holding in Royal is no longer valid).  Thus, the petitioner falls far short of establishing the prejudice required to support a claim of ineffective assistance of counsel on this ground.

Petitioner also challenges his counsel's reaction (or, in Robinson's view, inaction) when it was discovered that one of the jurors knew the attorney of a government witness.  On the second day of trial, it was revealed at sidebar that an attorney representing a witness due to testify for the defense was a friend of the family of one of the jurors.[4]  The attorney had been in the courtroom for several hours but did not believe that the juror had noticed his presence.  The Court – with the agreement of both parties –  determined that the best course of action was to eliminate all references to this attorney's name in the plea agreement which was to be submitted to the jury, to

---

[4] The attorney stated that he had gone on a honeymoon with, but was not married to, the daughter of one of the jurors.

instruct the witness not to mention the name of his counsel, and to have the attorney remain quietly in the back of the courtroom during the testimony.  (<u>See</u> Trial Tr. Vol. 2, 123-125, January 4, 2005).

Petitioner complains that his counsel never informed him of this potential conflict and faults counsel for failing to seek an inquiry into the juror's ability to remain impartial.  Even if it were ineffective not to tell Robinson about the conflict, there is no showing of prejudice because the juror likely never became aware of the attorney's involvement in the case.  As such, Robinson has not demonstrated ineffective assistance of counsel by failing to seek a juror inquiry.  Indeed if the attorney had pressed for an inquiry, he may well have made the juror aware of the role of this lawyer, thus worsening the situation if the juror then swore that he could remain impartial.  <u>See</u> <u>Mello v. DiPaulo</u>, 295 F.3d 137, 147 (1st Cir. 2002) (no ineffective assistance where counsel failed to challenge jurors which defendant thought to be biased and juror swore she could be impartial).

    2. <u>Guilty Plea to Drug Counts</u>

Petitioner contends that counsel was ineffective in his handling of the drug charges.  Robinson claims that he was prepared to plead guilty to the drug counts before trial, but that his attorney prevented him from doing so.  Petitioner seems to argue that because he did not plead guilty before the trial, the prosecution was able to put before the jury evidence related

-11-

to the drug counts which, in petitioner's view, tainted the jury's deliberative process.  Petitioner contends that his attorney erroneously believed that he could avoid this purported prejudice by conceding Robinson's guilt on the drug charges during his opening statement.  Notably, petitioner refers to these two actions by his attorney – advising petitioner not to plead guilty and subsequently admitting his client's guilt on those charges during opening argument – as unsound and unprofessional "trial strategy."  (Pet'r Br. 14.)

Petitioner's claim fails for at least two reasons.  First, "tactical decisions, whether wise or unwise, successful or unsuccessful, cannot ordinarily form the basis of a claim of ineffective assistance."  Murchu, 926 F.2d at 58 (quoting United States v. Ortiz Oliveras, 717 F.2d 1, 3 (1st Cir. 1983)).  Second, even if some evidence regarding the negotiation for the drugs might have been excluded had there been a pre-trial guilty plea, most of the evidence would still have been admissible.  Moreover, as the First Circuit found, the evidence was sufficient to support a finding that petitioner possessed the firearms and that he did so in furtherance of the drug deal.  Robinson, 473 F.3d at 398-401 (describing the evidence of Robinson's guilty as "neither exceptionally weak nor exceptionally strong" but finding that there was sufficient evidence for both firearms charges).  Petitioner was in the driver's seat of the Ford with two loaded semiautomatic pistols hidden under the hood where they were "loaded and accessible by Robinson during the drug deal with

-12-

DiTuillio." Id. at 399-400 (concluding that "a rational jury could have concluded that Robinson had the ability and intent to exercise dominion and control of the firearms for several reasons" and that the "jury had ample reason to conclude that Robinson possessed the firearms in furtherance of the drug deal"). Then, in a holding cell after his arrest, petitioner made the "boom-boom" statement, a statement which a "rational jury could have interpreted . . . to mean that Robinson could have shot the agents using the firearms found in the Ford." Id. at 399.

Accordingly, in light of the sufficient – and arguably strong – evidence against him on the gun charges, Robinson has not shown that his attorney's tactical decision was prejudicial and therefore his ineffective-assistance claim on this ground fails. Cf. Visconti v. United States, 454 F. Supp. 417, 418 (D. Mass. 1978) (rejecting as "sheer speculation" a Section 2255 petition contending that an alleged denial of an opportunity to plead guilty caused him to receive a higher sentence and adding that a defendant does not have a constitutional right to plead guilty).

3. The Speedy Trial Act

Petitioner also contends that his counsel unreasonably failed to move to dismiss the indictment based on what Robinson claims was a violation of the Speedy Trial Act's "thirty-day arrest-to-indictment requirement." United States v. Spagnuolo, 469 F.3d 39, 43 (1st Cir. 2006) (discussing the substance and

purpose of the Speedy Trial Act's time requirements); see 18 U.S.C. § 3161(b). A defendant's failure to move the court to dismiss an unlawfully delayed indictment can constitute a waiver of the right to dismissal. Spagnuolo, 469 F.3d at 44-46.

Robinson's claim fails, however, because despite his assertions to the contrary, the Speedy Trial Act's thirty-day requirement was not violated. The clock begins ticking when a defendant first appears in court, not on the day of arrest as Robinson suggests. United States v. Hood, 469 F.3d 7, 9 (1st Cir. 2006). Thus, the clock for Robinson began on April 13, 2004, the date of his initial appearance before a magistrate judge. Robinson was indicted on May 27, 2004, and thus a period greater than thirty days did elapse between the clock's start and the indictment. However, as the government points out, there were many days that were properly excluded under the Speedy Trial Act during this time. First, the magistrate judge granted a period of continuance for the period from April 13 through April 26th, a delay sanctioned by the Act. See 18 U.S.C. § 3161(h)(1)(7)(A).[5] The period of April 26th through May 3, 2004

---

[5] The relevant provision excludes "any period of delay resulting from a continuance granted by any judge . . . if the judge granted such continuance on the basis of his findings that the ends of justice served by taking such action outweigh the best interest of the public and the defendant in a speedy trial." 18 U.S.C. § 3161(h)(1)(7)(A). The statute requires the court to state its reasons for such a finding "either orally or in writing." Id. The government asserts that the magistrate judge granted the government's requested ten-day continuance at the initial appearance on April 13, 2004. The clerk notes for the

is also excludable as a time in which a "proceeding concerning the defendant [was] actually under advisement by the court."   18 U.S.C. § 3161(h)(1)(H).   On April 26th, the magistrate judge began detention proceedings and a preliminary examination of Robinson; the proceeding was continued to May 3, 2004, and a final order as to detention was issued on that date.

Accordingly, there were a total of twenty-one excludable days within the forty-four day period between initial appearance and indictment.   Thus, there could have been no more than twenty-three non-excludable days prior to Robinson's indictment, a period that falls well under the maximum of thirty non-excludable days permitted by the Speedy Trial Act, 18 U.S.C. § 3161.   See Hood, 469 F.3d at 11 (calculating excludable days).   Petitioner's claim that his counsel erred on this ground is therefore without merit.

4. Prior convictions

Petitioner contends that, despite repeated requests by

---

initial appearance reflect that the government requested a ten-day continuance "to contact state system to notify them of the arrest and charges" and, under "Continued Proceedings," list a detention and preliminary exam hearing set for April 26, 2004. As Robinson does not claim otherwise, there is no reason for this Court to believe that the magistrate judge did not also state the basis for the ends-of-justice continuance on the record, as is common practice.  Moreover, an ends-of-justice finding would be reasonable in this situation.  Cf. United States v. Bonilla-Filomeno, __ F.3d __, 2009 WL 2746956, *5 (8th Cir. Sept. 1, 2009) (finding that a court's statement that a continuance would grant the parties "time to pursue plea negotiations or prepare for trial" was sufficient under the Speedy Trial Act).

Robinson, his counsel declined to file motions to vacate prior state court convictions for resisting arrest and possession of ammunition.  Because these convictions were considered at sentencing, petitioner contends that, had they been removed, he would have fared better.  In September 2007, Robinson, acting <u>pro se</u>, filed a motion in state court to vacate these two convictions; the motion was denied in October 2007.[6]  (<u>See</u> Docket No. 222, Exs. 2,5, 6, 7.)  Without a successful motion to vacate, Robinson is unable to demonstrate the required prejudice, and this Court need not inquire further.  <u>See</u> <u>Malone</u>, 536 F.3d at 64.

Petitioner also contends that his counsel should not have conceded the fact of Robinson's convictions, specifically stating that the government should have had to prove that Robinson actually committed the prior crimes.  Robinson does not, however, suggest that the fact of his prior conviction was "not readily provable by reference to the public records and the like." <u>United States v. Fuller</u>, 768 F.2d 343, 347 (1st Cir. 1985) (rejecting claim that attorney erred by stipulating to multiple elements of the crime, including petitioner's prior conviction, because though it "may have saved the government some leg-work," the stipulation did not cause any prejudice); <u>see</u> <u>United States</u>

---

[6] Robinson asserts that this decision is pending on appeal. It is unclear whether just one or both of petitioner's motions to vacate have been ruled upon.  Either way, petitioner does not possess the successful motion to vacate needed to support a claim of prejudice.

v. Shea, 211 F.3d 658, 672 (1st Cir. 2000) (finding that it was reasonable for defense counsel to stipulate to a prior conviction to avoid more detailed proof).

### 5. Fingerprints

Petitioner argues counsel should have agreed to a stipulation with the government as to the absence of fingerprints on the guns.  Petitioner overlooks, however, that counsel could not force such a stipulation on the government.  In light of expert testimony detailing how one could handle or possess firearms without leaving fingerprints, it is unlikely that the government would have agreed to this stipulation.  Moreover, even were such a stipulation reached, it would not necessarily have stopped the government from presenting the expert testimony, and it is unlikely that it would have any impact on the outcome of the case.

### 6. Sentencing Predictions

Petitioner argues that counsel failed to accurately assess the factors and guidelines that would generate his sentence and, as a result, significantly underestimated the sentence Robinson would receive.  Robinson maintains that he received a sentence nearly twice as long as that predicted by his counsel.  In his affidavit in support of his petition, Robinson states that, had he been correctly informed of the amount of time he was facing (and that his prior convictions would be known to the jury), he would have sought a plea agreement.  (Pet'r Aff. ¶ 3.)  Any

possibility that this assertion could serve as proof of
prejudice, however, is undercut by the preceding paragraph in
which Robinson states: "I am actually innocent of both firearm
charges that I was found guilty of, as well as obstruction of
justice." (Id. at ¶ 2.)  To plead guilty, Robinson would have
had to admit sufficient facts and accept responsibility,
something that he is not even willing to do in this petition.
Accordingly, this Court finds his allegations on this issue to be
conclusory and self-serving.  Cf. Shelton v. United States, CR
No. 05-049-ML, 2009 WL 1491204, *8 (May 26, 2009) (rejecting
petitioner's claim that he was not informed of a plea offer
because the petitioner's repeated refusal [throughout pretrial,
trial, and sentencing proceedings] to admit his actions rendered
him unable to demonstrate prejudice and finding his allegations
to be "conclusory and self serving").

      In addition, it is well-established in the First Circuit
that "an inaccurate prediction about sentencing will generally
not alone be sufficient to sustain a claim of ineffective
assistance of counsel." Knight, 37 F.3d at 775 (in the context
of a challenge to guilty plea); Guerrero v. United States, No.
07-430L, 2008 WL 979802, *3 (D.R.I. April 9, 2008) (describing
the proposition as "long-held" in the First Circuit); see also
Visconti, 454 F. Supp. at 418 (stating that a defendant does not
have a constitutional right to plead guilty).  Moreover, when, as
here, a petitioner has received an "appropriate sentence," an
ineffective assistance claim cannot prosper." David, 134 F.3d at

477.  The First Circuit has already upheld the sentence that this
Court imposed upon Robinson.  See Robinson, 473 F.3d at 400.  For
all these reasons, petitioner's ineffective assistance claim
based on inaccurate sentencing predictions fails.

    7.  Inconsistent Objections to Prosecutorial Misconduct

    Robinson also complains that his counsel should have
objected to the prosecution's conduct, particularly the
government's references to Robinson's prior involvement with
drugs, and that he should have requested a curative instruction.
No prejudice can be established, however, as the First Circuit
has already considered and rejected petitioner's contention that
prosecutorial misconduct occurred at the trial.  See Robinson,
473 F.3d at 398.  In doing so, the First Circuit noted that even
though Robinson's counsel did not request a curative instruction,
the "district court did give general instructions before
deliberations regarding what the jury could and could not
consider as evidence."  Id.  Significantly, the First Circuit
concluded that, even if there were some missteps by the
prosecution, they were "not sufficiently linked to the outcome so
as to require a new trial."  Id.  (also emphasizing that there
was sufficient evidence to convict Robinson on the firearms
charges).

    8.  New Evidence

    Robinson contends that new evidence was discovered during
trial that would have been sufficient to exonerate him of both

-19-

firearms offenses.  He argues that his counsel erred by failing
to ask for a continuance to investigate the matter.[7]  At the
close of the second day of trial, defense counsel advised the
Court (at sidebar) that he had received information that, in his
view, could support an inference that one of Robinson's co-
defendants was the one who possessed the gun.  (See Trial Tr.
Vol. 2, 126, January 4, 2005).  The government replied that there
were four individuals whom defense counsel had asked for
assistance in locating and that three of them had previously been
summonsed.  (Id. at 126-27.)  The government volunteered to call
these three individuals and inform them that the defense would
like to have them at trial.  As to the fourth individual, the
government stated that it had so far been unable to locate him.
(Id.)  The Court acknowledged that this information could be
"critical" and that the defense counsel needs to "follow that
lead."  (Id. at 128.)

     It is unclear on this record what happened after this
sidebar conversation.  Beyond asserting that it was error for his
counsel not to seek a continuance, Robinson does not describe
what, if any, actions his counsel took regarding investigation
and what, if any, evidence he ultimately uncovered.  Without such
information, this Court is unable to evaluate either Robinson's

---

[7] In addition to asserting that his counsel erred by failing
to fully investigate this evidence, Petitioner makes a "stand-
alone" claim based on this evidence.

claim of ineffective assistance or any resulting "actual innocence" claim that he may assert based upon this "new evidence."  As this petition is <u>pro se</u>, this Court will afford Robinson the opportunity to supplement the record on this one issue (with respect to both his stand-alone claim and his ineffective-assistance claim) by submitting an affidavit, under oath, detailing what this new evidence was, its materiality, and why Robinson contends that it would probably result in an acquittal upon retrial.  See <u>Awon</u>, 308 F.3d at 140 (stating the standard for evaluating a section 2255 motion based on newly discovered evidence).  Petitioner has thirty days from the date of this order to submit such an affidavit.  If petitioner submits an affidavit, the government should respond within thirty days.

### IV. ORDER

For the foregoing reasons, Tavon Robinson's petition pursuant to 28 U.S.C. § 2255 (Docket No. 222) is **<u>DENIED</u>** with prejudice as to all grounds except his claims of newly discovered evidence.  If petitioner does not submit an affidavit as described by this Court above within thirty (30) days from this Order, relief on that ground will be denied as well.


<u>S/PATTI B. SARIS</u>

United States District Judge


-21-